Jose Miguel Rojas CANCANON and Elizabeth Ponce Luzardo, his wife, Plaintiffs-Appellees, Cross-Appellants,

v.

SMITH BARNEY, HARRIS, UPHAM & COMPANY, a foreign corporation for profit, Defendants-Appellants, Cross-Appellees.

No. 85–5579
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 10, 1986.

O'Bannon M. Cook, Ruden Barnett McClosky, Schuster & Russell, P.A., Tallahassee, Fla., for defendants-appellants, cross-appellees.

H. Mark Vieth, Proenza, White, Huck & Suarez, P.A., Miami, Fla., for plaintiffs-appellees, cross-appellants.

Before GODBOLD, VANCE and JOHNSON, Circuit Judges.

PER CURIAM:

This is an appeal from an order denying arbitration on a claim brought pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, and compelling arbitration of state law claims of negligence, civil theft and fraud. All claims involve alleged misrepresentation and "churning" in connection with a securities account.

Smith Barney moved to compel arbitration of both the 10b–5 claim and the state law claims. In so doing, Smith Barney produced photocopies of securities account agreements which provided that "[a]ny controversy between Smith Barney and [plaintiff] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration. . . ." The district court granted Smith Barney's motion in part, ordering arbitration of the state law claims, but ruled against arbitration of the claim brought under § 10(b) of the Securities Exchange Act of 1934. Relying on *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (claims under § 12(2) of Securities Act of 1933 not subject to arbitration),

and recent Eleventh Circuit precedent, *see, e.g., Raiford v. Buslease, Inc.*, 745 F.2d 1419, 1421 (11th Cir.1984); *Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 693 F.2d 1023, 1025–26 (11th Cir.1982); *Sibley v. Tandy Corp,* 543 F.2d 540, 543 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), the court held that 10b–5 claims are not subject to arbitration. 612 F.Supp. 996 (1985).

Smith Barney appeals that part of the district court's order which holds that the plaintiffs' 10b–5 claim is not subject to arbitration. The plaintiffs in turn cross-appeal that portion of the district court's order that compelled arbitration of their state law claims.

Smith Barney argues that the district court failed to comply with the congressional mandate for arbitration in the Federal Arbitration Act, 9 U.S.C. §§ 1–14, and overlooked the impact of recent Supreme Court decisions supporting the view that 10b–5 claims are subject to arbitration. This precise issue was recently taken up by this court sitting *en banc. Wolfe v. E.F. Hutton & Co.*, 800 F.2d 1032 (11th Cir. 1986). This court held in *Wolfe* that claims under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 are not subject to resolution pursuant to an arbitration agreement entered into before the claim arose. In light of this recent decision, Smith Barney's contention is contrary to the law of this circuit and without merit. We therefore affirm the portion of the district court's order denying arbitration of plaintiffs' 10b–5 claim. .

The plaintiffs' cross-appeal presents a more troubling issue. They allege that when they opened their account with Smith Barney, a Smith Barney employee, Benjamin Vaisman, represented that they were opening a money market account. The securities agreements in question are written in English, and plaintiffs allege they have no knowledge of the English language. Plaintiffs further allege that either their signatures were furtively obtained or the signatures appearing on the securities account agreements were forged, as part of a scheme by Vaisman to steal their money and ultimately flee the country. They also allege that soon after they opened their account, Vaisman falsified records to direct client correspondence to his own address. In this manner the plaintiffs were deprived of their monthly statements, and Vaisman was able to conceal the fraudulent and unauthorized transactions that took place.

The plaintiffs initially funded their account with the sum of $55,000 in government securities.[1] They subsequently deposited an additional sum of $22,685 and withdrew $3,027.29. The plaintiffs allege they did not conduct or authorize any further transactions in the account. Between March 26, 1983 and February 24, 1984, ninety-three separate purchases and sales of non-government securities occurred in their account. Smith Barney and Vaisman earned $38,693 in commissions on these trades, exhausting nearly half of the plaintiffs' principal. By March 30, 1984 the plaintiffs' $74,657.71 was reduced to $3,126.

Since the plaintiffs allege they intended to enter solely into a money market account agreement[2] and that a Smith Barney officer represented to them that documents written in a language foreign to them constituted a money market account agreement, they argue that the contract was void because of fraud in the "factum," or execution, of the agreement. Under this theory no contract existed between the parties, and the plaintiffs could not be subject to the arbitration clause contained in the documents.[3]

1. While the plaintiffs funded their account with securities, they maintain they had no intention of trading securities or opening a "securities account," the purpose of which is the trading of securities.

2. The Smith Barney money market account agreement, which plaintiffs admit they signed, does not contain an arbitration clause.

3. Plaintiffs also argue that the signatures appearing on the securities account agreements may have been forged. Plaintiffs were not allowed to verify or substantiate this claim be-

Smith Barney counters that under the Federal Arbitration Act, 9 U.S.C. § 4, only the claim of fruad in the inducement of the arbitration clause itself—rather than fraud in the inducement of the entire agreement—may be adjudicated by a court. All other defenses are subject to arbitration. Smith Barney cites *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391 (5th Cir. Unit B 1981), as support for their argument.

■ We find the plaintiffs' argument more persuasive. Where misrepresentation of the character or essential terms of a proposed contract occurs, assent to the contract is impossible. In such a case there is no contract at all. Restatement (Second) of Contracts § 163, comment a (1977). In *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54–55 (3d Cir.1980), the court stated "[t]he mere execution of a document ... does not negate a factual assertion that such signature was not intended to represent a contractual undertaking." [4] *See also Lummus Co. v. Commonwealth Oil Refining Co.*, 280 F.2d 915, 923 n. 8 (1st Cir.1960) (in holding that fraud in the inducement of a contract was subject to arbitration, the court distinguished cases of fraud in the factum).

■ This court's predecessor has also distinguished contracts with arbitration clauses for which there was effective assent from contract documents containing arbitration clauses where assent to the contract was ineffective. *T & R Enterprises, Inc. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980) (where signatures were lacking, issue of existence of agreement could not be resolved pursuant to arbitration clause). *See also Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir.1972). As in the present case, where the allegation is one of fraud in the factum, i.e., ineffective assent to the contract, the issue is not subject to resolution pursuant to an arbitration clause contained in the contract documents.[5]

■ Smith Barney further contends that the plaintiffs failed to meet their burden to produce "some evidence ... to substantiate the denial" of an agreement. *T & R Enterprises, Inc. v. Continental Grain Co.*, 613 F.2d at 1278 (quoting *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625 (2d Cir.1945)). Smith Barney points to the fact that plaintiffs have not filed any affidavits or a verified complaint to support their allegations. We however find that the plaintiffs have sufficiently substantiated their allegations that they never intended to enter into a securities account agree-

---

cause the district court stayed discovery pending appeal. The district court correctly stayed discovery, and plaintiffs failed to argue before that court the issue of limited discovery for the purpose of determining the authenticity of the signatures. Whether this issue should now be reopened is within the discretion of the trial judge.

4. The court in *Par-Knit* held that the making of an arbitration agreement was sufficiently placed into issue because it was uncertain whether a corporate employee who signed the agreement in question had the authority to bind the corporation. This issue was held not subject to resolution by arbitration.

   A district court in this circuit disavowed the reasoning in *Par-Knit*, stating that "the issue of the agreement's *existence* and validity go to arbitration." *Ross v. Mathis*, 624 F.Supp. 110, 114 & n. 3 (N.D.Ga.1985) (emphasis added). This pro-

nouncement was not only erroneous, but unnecessary because the allegations in *Ross* merely amounted to fraud in the inducement or performance of the contract and did not constitute an allegation of fraud in the factum.

5. The authority cited by Smith Barney is distinguishable on just such a ground. In *Merrill Lynch, Pierce, Fenner & Smith v. Haydu*, 637 F.2d 391, a stock brokerage customer claimed that she signed options trading agreements containing arbitration clauses while distracted and coerced by high pressure sales talk, and under circumstances amounting to confusion, undue influence and duress. These were not allegations of ineffective assent, but rather of fraud in the inducement of a contract. *See* Restatement (Second) of Contracts § 164(1) (1977). Thus the court properly held that these allegations were subject to resolution by arbitration.

ment and were duped by a Smith Barney employee.

Accompanying their Amended Complaint, the plaintiffs filed Exhibit B which constitutes a letter, dated March 28, 1984, from Benjamin Vaisman to the plaintiffs. This letter is a fictitious financial summary of account No. 037–640441. The number corresponds to a securities account agreement purportedly signed by the plaintiffs. The summary however included only a balance for "Vantage Finds [sic]," Smith Barney's designation for a money market account. The balance was stated as $77,913.98 with dividends of $3,126, an amount which plaintiffs would reasonably expect to represent their entire interests at Smith Barney. This letter bears no indication that any trading in securities had occurred in the plaintiffs' account. The information in the letter bears little resemblance to the type of statement expected by someone who has opened a securities trading account. *See* Record on Appeal No. 16, Exh. A. (copies of plaintiffs' actual statements which allegedly were never mailed to their correct address). Nor is there any indication from this letter that Vaisman attached additional statements. It appears that the letter was intended as a representation that plaintiffs' money, in its entirety, was held in a money market account.

This correspondence supports plaintiffs' contention that they had no knowledge that they had a securities account with Smith Barney, and that Mr. Vaisman specifically intended that they have no knowledge of this fact. The letter casts sufficient doubt upon the nature of the manifestations of assent appearing on the documents produced by Smith Barney, and sufficiently raises the issue of fraud in the factum.[6] This issue is not subject to resolution by arbitration, and the plaintiffs are entitled to a trial on this issue. 9 U.S.C. § 4. We therefore must reverse that portion of the district court order compelling arbitration of the

state law claims, and remand this case for a trial on the issue of whether the plaintiffs gave effective assent to the securities agreements.

AFFIRMED in part, REVERSED in part and REMANDED.

---

6. We do not suggest that under other circumstances plaintiffs' showing by exhibit would be sufficient to raise the issue of fraud in the factum. Since Smith Barney's unverified motion to compel arbitration was supported solely by exhibits (photocopies of purported securities account agreements), we conclude that plaintiffs' showing in kind to refute the existence of those agreements was sufficient.