Ricky Earl Majors, the plaintiff in an action pending in the Circuit Court of Shelby County, petitions this Court for a writ of mandamus directing the trial judge to whom Majors's case is assigned to vacate his order granting a motion to compel arbitration filed by Jon Ellen Nix, Jean Webb, and SouthTrust Bank (hereinafter collectively referred to as "the defendants").[1] We grant the petition for the writ of mandamus.
On October 2, 2000, Majors sued the defendants. Majors's complaint alleged (1) that Nix and Webb, as employees of SouthTrust Bank, engaged in, assisted with, or supervised loan transactions made by his wife, Donna Patricia Majors,[2] also a bank employee, that created a debt in his name without his knowledge, consent, or authorization; (2) that Nix and Webb knew or should have known that his wife had wrongfully signed his name to the loan documents and that they wrongfully witnessed and notarized those documents, *Page 87 
stating that they had witnessed his signing those documents when they had not; (3) that Nix and Webb had conspired with his wife, intentionally defrauded him of credit, assisted in the wrongful creation of debt in his name, wrongfully assisted his wife in obtaining money in his name, and hid or assisted in hiding bank transactions from him or in misrepresenting bank transactions to him; and (4) that SouthTrust Bank should have known about Nix's and Webb's actions, which were against bank policy and procedure, that the bank had failed to protect him from these actions, and was liable for the negligent and fraudulent actions of Nix and Webb.[3] The transactions from which Majors's complaint arose involved a home-equity line of credit and a promissory note secured by a certificate of deposit.
On December 20, 2000, the defendants filed a motion to dismiss or, in the alternative, to stay the action and compel arbitration. In their motion they argued, among other things, that the documents evidencing the loans contained arbitration clauses that required that this dispute be arbitrated pursuant to the rules of the American Arbitration Association. The motion attached as exhibits copies of documents evidencing a "Home Equity Loan Line Agreement, Note Disclosure" secured by a home mortgage, all relating to an April 13, 1998, home-equity loan by SouthTrust Bank, and a promissory note, secured by an assignment of a certificate of deposit, relating to a December 10, 1999, loan by SouthTrust Bank. These exhibits constituted the loan documents that were the basis of Majors's complaint. The motion also attached an affidavit of Donna Majors and portions of transcribed testimony taken at Majors's deposition.
On February 1, 2001, Majors filed a motion in opposition to the defendants' motion. He argued that he had not knowingly entered into the contracts in question, evidenced by the loan documents, because he had not signed any of the documents relating to the December 10, 1999, promissory-note transaction, claiming that his wife or some other person had signed for him, and because, if his signature did appear on certain documents relating to the April 13, 1998, home-equity-line-of-credit transaction, he had signed them only as a result of his wife's representations that the documents were credit applications. He further contended that Nix and Webb had wrongfully acknowledged his signing the home-equity-line-of-credit documents in their presence, when he had not. He argued that a party cannot be required to submit to arbitration any dispute he has not agreed to submit, citing Allstar Homes, Inc. v.Waters, 711 So.2d 924 (Ala. 1997), and American Bankers Life AssuranceCo. v. Rice Acceptance Co., 739 So.2d 1082 (Ala. 1999), and that a signatory to a contract containing an arbitration clause cannot compel a nonsignatory spouse to arbitrate, citing Ex parte Dickinson, 711 So.2d 984
(Ala. 1998) (four Justices concurring in the lead opinion, one Justice concurring in the result, and four Justices dissenting on this point) (rule stated by lead opinion later adopted by this Court in Tom WilliamsMotors v. Thompson, 726 So.2d 607 (Ala. 1998)). Majors attached his own affidavit and portions of transcribed testimony taken at Nix's deposition as exhibits to his motion in opposition.
The trial court heard arguments on the parties' motions on February 7, 2001, and March 7, 2001. On June 28, 2001, the trial *Page 88 
court entered an order that, in pertinent part, stated:
 "The Motion to Stay and Compel Arbitration which has been filed by the defendants Jon Ellen Nix, Jean Webb, and SouthTrust Bank is GRANTED, and the parties shall arbitrate the plaintiff's pending claims against said defendants pursuant to the applicable arbitration agreements; all proceedings against said defendants in this pending case in the Circuit Court of Shelby County, Alabama, are STAYED, pending the conclusion of the arbitration."
This Court's standard of review applicable to a petition for the writ of mandamus is well settled:
 "A writ of mandamus is an extraordinary remedy, and it will be `issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.' Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991)."
Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998). Furthermore, "[t]his Court has held that when the issue raised in a petition for the writ of mandamus is the correctness of a ruling on the question of arbitrability, that ruling is reviewed de novo." Ex parteStamey, 776 So.2d 85, 88 (Ala. 2000) (citing Ex parte Roberson,749 So.2d 441, 446 (Ala. 1999)).
Majors argues that the arbitration clauses contained in the loan documents should not operate to compel him to arbitrate his claims because, he says, the underlying contracts are void. He asserts that he did not sign the documents relating to the 1999 promissory note, including the note itself; he further asserts that if he did sign certain documents relating to the 1998 home-equity line of credit, he did so only through his wife's misrepresenting them as being mere credit applications. Thus, the gist of Majors's argument is that if he signed certain home-equity-line-of-credit documents, he did so only as a result of his wife's fraudulent inducement, and that any signatures purporting to be his on the promissory-note documents are forgeries. In its response to Majors's petition, filed with this Court, the defendants acknowledge that the December 10, 1999, "promissory note admittedly was signed by Mrs. Majors on behalf of her husband."
We cannot determine from the order entered by the trial court if it made any initial findings as to whether the underlying contracts were valid or whether Majors's claims were arbitrable. The arbitration clause contained in one of the home-equity-line-of-credit documents stated, in pertinent part:
 "Arbitration. You agree with us that all disputes, claims and controversies between us, whether individual, *Page 89 
 joint, or class in nature, arising from this Mortgage or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association, upon request of either party. . . . The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision."
The arbitration clause contained in the promissory note stated similarly, in pertinent part:
 "ARBITRATION. I and Lender agree that all disputes, claims and controversies between us whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. . . . The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision."
While this Court has held similar language to be sufficiently broad to allow an arbitrator to decide the issue of arbitrability, see, e.g.,Green Tree Financial Corp. v. Wampler, 749 So.2d 409 (Ala. 1999), nothing in the trial court's order suggests that it made this initial finding or that it determined whether the contracts at issue were valid. See AlabamaCatalog Sales v. Harris, 794 So.2d 312, 317 (Ala. 2000) ("if the contracts are void and unenforceable, no claims arising out of or relating to the contracts are subject to arbitration") (citing ShearsonLehman Bros., Inc. v. Crisp, 646 So.2d 613, 616-17 (Ala. 1994);Interocean Shipping Co. v. National Shipping Trading Corp.,462 F.2d 673 (2d Cir. 1972); and Camaro Trading Co. v. Nissei SangyoAmerica, Ltd., 577 So.2d 1274 (Ala. 1991)).
In Ex parte Meadows, 782 So.2d 277 (Ala. 2000), the plaintiff in an action against the manufacturer, dealer, and lender involved in his purchase of a mobile home for breach of warranty, breach of contract, and fraud, sought a writ of mandamus directing the trial court to vacate its order granting the defendants' motion to compel arbitration. The plaintiff claimed that his signature on the documents containing the arbitration clause was a forgery. This Court granted the writ, explaining its rationale by setting forth the following statements of applicable legal principles:
 "The United States Court of Appeals for the Eleventh Circuit has stated:
 "`The Federal Arbitration Act governs the question of who must decide issues of arbitrability. Under the Act, a district court must compel arbitration if the parties have agreed to arbitrate their dispute. 9 U.S.C. § 2, 3 (1988). However, if the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties. Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so. Thus, "the first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute."'
 "Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 853-54
(11th Cir. 1992). (Citations omitted.)
 "The Eleventh Circuit has also adopted the following rule:
 "`"To make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial."'
 "Id. at 854 (quoting T R Enters. v. Continental Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980)). This Court has held that `"because an `arbitrator's jurisdiction is rooted in the agreement of the parties,' a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate."' Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 616-17 (Ala. 1994) (quoting Three Valleys Mun. Water Dist. v. E.F. Hutton Co., 925 F.2d 1136, 1140-41 (9th Cir. 1991) (citations omitted)). `"A *Page 90 
 contrary rule would lead to untenable results. Party A could forge Party B's name to a contract and compel Party B to arbitrate the genuineness of [his or her] signature."' Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 460 (quoting Three Valleys Mun. Water Dist. v. E.F. Hutton Co., 925 F.2d 1136, 1140
(9th Cir. 1991))."
782 So.2d 279-80.
In regard to Majors's claim that his purported signatures appearing on the December 10, 1999, promissory-note documents were forgeries, we conclude that the trial court should have made specific findings of fact as to that issue. As stated in Meadows, supra, this is an issue to be determined by the trial court, not by an arbitrator. Further, in WalterIndustries, Inc. v. McMillan, 804 So.2d 1081 (Ala. 2001), we observed:
 "`The United States Supreme Court has stated that "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud . . . that would provide grounds `for the revocation of any contract.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). While this is true, courts should be even more attuned to claims that the agreement from which arbitration allegedly stems was, in fact, a forged document, which would not even provide the basis from which a court could find a valid contract to be revoked. . . .'"
Id. at 1086 (quoting Carl Gregory Chrysler-Plymouth, Inc. v. Barnes,700 So.2d 1358, 1360-61 (Ala. 1997)). See also Ex parte Caver,742 So.2d 168, 172 n. 4 (Ala. 1999) ("If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested.").[4]
Furthermore, in regard to Majors's claim that he was fraudulently induced to sign certain documents relating to the home-equity-line-of-credit transaction, that claim is more appropriately treated as a claim of fraud in the factum. In Oakwood Mobile Homes, Inc.v. Barger, 773 So.2d 454, 459-60 (Ala. 2000), this Court stated, in pertinent part:
 "Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action. See Reynolds v. Mitchell, 529 So.2d 227
(Ala. 1988).
 ". . . Fraud in the factum occurs when a party `procures a[nother] party's signature to an instrument without knowledge of its true nature or contents.' Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 93, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). See also Drinkard v. Embalmers Supply Co., 244 Ala. 619, 14 So.2d 585 (1943), and Burroughs v. Pacific Guano Co., 81 Ala. 255, 1 So. 212 (1887). Fraud in the factum constitutes ineffective assent to the contract. Cancanon v. Smith Barney, Harris, Upham Co., 805 F.2d 998 (11th Cir. 1986). *Page 91 
". . . .
 "Other courts have held that claims of fraud in the factum or of lack of assent to a contract are not subject to arbitration. Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir. 1992); Three Valleys Mun. Water Dist. v. E.F. Hutton Co., 925 F.2d 1136
(9th Cir. 1991); National R.R. Passenger Corp. v. Boston Maine Corp., 850 F.2d 756 (D.C. Cir. 1988); Brotherhood of Teamsters Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co., 832 F.2d 507 (9th Cir. 1987); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (3d Cir. 1980); N D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722 (8th Cir. 1976); General Media, Inc. v. Shooker, (No. 97 Civ. 510, July 16, 1998) (S.D.N Y 1998) (not published in F. Supp.); Rainbow Investments, Inc. v. Super 8 Motels, Inc., 973 F. Supp. 1387 (M.D.Ala. 1997); WMX Technologies, Inc. v. Jackson, 932 F. Supp. 1372
(M.D.Ala. 1996); Nuclear Elec. Ins. Ltd. v. Central Power Light Co., 926 F. Supp. 428 (S.D.N.Y. 1996); Kyung Lee v. Pacific Bullion (New York), Inc., 788 F. Supp. 155 (E.D.N.Y. 1992); Dougherty v. Mieczkowski, 661 F. Supp. 267 (D.Del. 1987); Shearson Lehman Bros., Inc. v. Crisp, 646 So.2d 613 (Ala. 1994). But see R.M. Perez Assocs., Inc. v. Welch, 960 F.2d 534 (5th Cir. 1992), and C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin Jenrette Secur. Corp., 912 F.2d 1563 (6th Cir. 1990).
 "In Shearson Lehman Bros., supra, this Court recognized that a challenge to avoid or to rescind a contract is subject to arbitration but a challenge to the very existence of a contract is not subject to arbitration. A claim of fraud in the factum is a challenge to the very existence of the contract. Cancanon, supra. In Shearson Lehman Bros., this Court adopted the rationale of Three Valleys Municipal Water District v. E.F. Hutton Co., 925 F.2d 1136 (9th Cir. 1991), which involved a claim of fraud in the factum relating to a contract containing an arbitration clause, and which cited Cancanon, supra. In Three Valleys the Court of Appeals for the Ninth Circuit stated that only a court determines whether a contract exists inasmuch as an arbitrator's authority to resolve disputes is derived from the contract. . . . Therefore, because this Court has adopted the rationale of Three Valleys, a claim of fraud in the factum is to be decided by a trial court or a jury.
". . . .
 "Fraud in the factum is a traditional fraud. A claim of fraud, including such fraud as fraud in the factum, requires the party making the claim to prove by substantial evidence that he or she reasonably relied on the alleged misrepresentation. Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997). This Court explained reasonable reliance in Torres v. State Farm Fire Cas. Co., 438 So.2d 757 (Ala. 1983):
 "`If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. . . .
 "`"If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, `volenti non fit injuria'."
"`Munroe v. Pritchett, 16 Ala. 785, 789 (1849).'"
"438 So.2d at 759."
773 So.2d at 459-60.
We conclude that Majors has a clear legal right for the trial court (1) to make findings as to whether the December 10, *Page 92 
1999, promissory-note documents are valid (including whether his signature was forged to certain of those documents, as he contends) and whether this claim is arbitrable, and (2) to make findings as to whether Majors has proven by substantial evidence that he reasonably relied on his wife's alleged misrepresentations that certain documents he signed in relation to the April 13, 1998, home-equity-line-of-credit transaction were only credit applications and were signed without his knowing their true nature or contents, before it might properly order these claims to arbitration. Therefore, the petition for writ of mandamus is granted and the trial court is ordered to vacate its order granting the defendants' motion to compel arbitration and to conduct such other proceedings as may be warranted by this case.
PETITION GRANTED; WRIT ISSUED.
Houston, See, Lyons, Brown, Johnstone, Woodall, and Stuart, JJ., concur.
Moore, C.J., concurs in the result.
[1] We note that Rule 4(d), Ala.R.App.P., adopted effective October 1, 2001, now provides that the review of a grant of a motion to compel arbitration is by appeal, rather than by a petition for the writ of mandamus. However, Majors's petition was filed on August 9, 2001, before the effective date of the adoption of Rule 4(d).
[2] At the time Majors's complaint was filed, he and his wife were involved in divorce proceedings.
[3] Majors also made allegations against Sloss Federal Credit Union, which was named as a defendant in his complaint. However, Sloss Federal Credit Union is not named as a respondent in this petition for a writ of mandamus.
[4] While we do not intend to bind the trial court in its consideration of what might constitute forgery under the circumstances of this case, we do offer the following citations that may be helpful in making that determination: Life Insurance Co. of Georgia v. Smith, 719 So.2d 797
(Ala. 1998); Ex parte State ex rel. Attorney General, 213 Ala. 1,104 So. 40, (1924); Rembert v. State, 53 Ala. 467 (1875); Finney v.State, 348 So.2d 876 (Ala.Crim.App. 1977).